## Dobbin's Estate.

Argued October 16, 1941.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*George Henry Huft,* with him *Paul R. Bohan* and *Wm. J. Begley,* for appellant.

*S. Lloyd Moore,* for appellee.

*Joseph S. Conwell, Jr.,* for appellee.

OPINION BY HIRT, J., February 28, 1942:

James M. Dobbin died testate on April 11, 1920 and after administration, his residuary estate was awarded to trustees in accordance with his will. Fidelity-Philadelphia Trust Company is now the sole successor trustee of the fund. The will, after the payment of a specific legacy, directed that the net income

be paid to his daughter, Isabel Dobbin, appellant herein, for life, with a general power of appointment as to the corpus of the residuary estate. A codicil revoked this power and directed distribution of the residue at her death "to her descendants per stirpes" or on failure thereof, to appellee, The Presbyterian Home for Aged Couples and Aged Men. Appellant has no issue.

Isabel Dobbin owns upwards of 99% of the stock of a corporation, the holder of the record title to three apartment houses and a vacant lot in Atlantic City, N. J. One of them, the "Ohio Apartment" is encumbered by a first mortgage of $15,000. A second mortgage of approximately $7,200 is past due and the holders have demanded payment but are willing to extend the term for five additional years on payment of $1,200. One year's taxes also will have to be paid. The land and the buildings are now assessed at $28,250. Appellant testified that she built and furnished the apartment house in 1926 at a cost of about $160,000. She believes that this property, considering the prospect of income for the future, has value over and above the encumbrances, and to save it from foreclosure, has made a demand on the trustee for the payment of $2,000 from the corpus of the trust under the following provision of the will: "Notwithstanding the Trusts hereinabove declared for my daughter Isabel Dobbin, I *direct* that she shall have *the right at any time in the event of an emergency to withdraw* a sum or sums from the principal of the fund herein set apart for her benefit not exceeding in any one year the sum of $2,000 and not exceeding in the aggregate $10,000 and to such sums when so withdrawn the trust limitations herein contained shall absolutely cease and determine." (Italics added.)  The account of the trustee shows a balance of principal of about $61,000.

The corporation in the past has been able to pay salaries to appellant and her husband, all taxes except

those now in arrears, interest and instalments of principal on the mortgages as they came due, and all other carrying charges. The corporation showed a net operating profit for eleven months immediately preceding appellant's request.

On the audit of the trustee's account, the payment of $2,000 to appellant was refused. Two reasons are advanced in the majority opinions of the judges of the lower court for the refusal; it was held that the power given by the will contemplates an emergency requiring the consumption of the payment for the benefit of the donee, and that the testator, in view of a spendthrift provision attaching to the trust, did not intend to provide funds to enable his daughter to risk any part of the principal in speculative business ventures.

We think these views place a too narrow construction upon the clause in question. Our function is to determine the intention of the testator from the langauge of the will in the light of the attending circumstances. *Brennan's Estate,* 324 Pa. 410, 188 A. 160.

The will is artistically drawn. Testator provided for his daughter's physical needs by giving her the income of the trust for life. If he intended to restrict the payment of $2,000 from principal in any one year, to an emergency involving her additional support, maintenance or comfort, it is reasonable to assume that he would have said so. The will must be read in the light of the fact that appellant was testator's daughter and the principal object of his bounty; the remainderman is a corporate charity. In the construction of a will, every intendment is to be made in favor of the heirs or next of kin. *Wood's Estate,* 321 Pa. 164, 184 A. 113. The "emergency" which gives the daughter the right to withdraw, is not qualified or restricted in the will to an emergency of any particular character or kind. The language is general, and the provision is operative in any pressing situation, personal to the donee, which the payment of money will relieve.

Appellant undoubtedly is confronted with an emergency. In reality, she is the owner of the Ohio Apartment. Neither she nor the corporation, which holds the title and manages all of the properties, has sufficient funds to prevent foreclosure on the second mortgage. She is personally liable on the bond accompanying the first mortgage. She has a large investment in the property in question which may be totally lost by foreclosure on the mortgage. The prospect of being able to save her investment is reasonable and it is not improbable that she may accomplish that end by an extension of the mortgage into a period of generally higher rental income.

Appellant may fail in her attempt, but in the absence of evidence clearly indicating that even with the payment of $2,000, the loss of her property is inevitable, we agree with the following from the dissenting opinion of LADNER, J. in the court below: "We have nothing to do with the wisdom of her decision upon the question of whether she ought to save an unprofitable property or not. Nor do I think the spendthrift clause makes the case any stronger, for the testator has adopted his own method of protecting the principal against an improvident exercise of this power by restricting the right of withdrawal to a sum not exceeding $2,000 in any one year and to a gross sum of $10,000. Due consideration ought likewise to be given to the fact that plainly the testator regarded his daughter as the primary object of his bounty, and not the charity remainderman. A view thus taken from the 'testator's armchair,' (see *Jackson's Estate*, 337 Pa. 561 at p. 566) confirms what I regard as the natural interpretation of the will." So long as we are bound to recognize that an emergency exists, we have no power to substitute our judgment for that of the appellant and on the ground of what we consider expedient, refuse to honor her request. It is not for us to preserve the corpus of the trust intact for the benefit of an ultimate

remainderman merely for the reason that the problem confronting appellant may not be wholly solved by the payment. This is the first request by her since the death of decedent in 1920, and is no evidence of an effort on her part to deplete the estate.

The decree is reversed and the trustee is directed to pay appellant $2,000 from the principal of the fund, as of the date of her request. Costs to be paid by the estate.